854 So.2d 1140 (2002)
D.S.M., Jr.
v.
L.M. and D.M.
2010021.
Court of Civil Appeals of Alabama.
August 16, 2002.
*1141 R. Shan Paden and Matthew A. Reynolds of Paden & Paden, Birmingham, for appellant.
J. Ronald Boyd and Charles H. Dunn of Boyd, Fernambucq & Vincent, P.C., Birmingham, for appellee L.M.
Jon B. Terry of Bains & Terry, Bessemer, for appellee D.M.
CRAWLEY, Judge.
D.S.M., Jr., appeals from a judgment finding him to be the father of K.M. and ordering him to pay $550 per month in child support. We affirm.
L.M. ("the wife") and D.M. ("the husband") were married in 1974. Three children were born during the marriage. The two older children have reached the age of majority. The youngest child, K.M., a 10-year-old girl, was born on October 1, 1991. In September 1999, shortly before K.M.'s eighth birthday, the wife filed a complaint for divorce. While the divorce proceeding was pending, the wife informed the husband that he was not K.M.'s biological father, that she had had an affair with D.S.M. eight years earlier, and that D.S.M. was K.M.'s father. On August 25, 2000, the trial court ordered the husband, wife, and child to submit to blood testing. The results of the blood tests were filed with the court on September 25, 2000. The tests excluded the husband as the father of K.M. At that point, the husband did not persist in maintaining the parental presumption of § 26-17-5(a)(1), Ala.Code 1975.[1] D.S.M. voluntarily submitted to paternity testing; the test indicated that he was the biological father of the child.
The trial court appointed a guardian ad litem ("GAL") for the child. The GAL moved to add D.S.M. as a third-party defendant, and the trial court granted that motion on February 6, 2001. Asserting a statute-of-limitations defense, D.S.M. moved for a judgment on the pleadings on February 23, 2001. The trial court denied that motion on March 5, 2001. The trial court rendered a judgment of divorce on June 19, 2001. The judgment states, in pertinent part:
"That the third-party defendant, [D.S.M.], Jr. is the legal father of [K.M.] and the [husband, D.M.] shall have no legal responsibility towards her. This court finds that the purpose of paternity testing between the parties only arose after the [wife] informed the [husband] that he was not [K.M.'s] father, and as such, was to establish the non-existence of a relationship between [K.M.] and [the husband] presumed on account of the ... marriage of [the wife and husband] and as such, the five-year statute of limitations imposed pursuant to § 26-17-6(a), Ala.Code 1975, does not apply. *1142 Ex parte Jenkins, 723 So.2d 649 (Ala. 1998)."
The trial court awarded custody of K.M. to the wife and ordered D.S.M. to pay $550 per month in child support. D.S.M. appeals, arguing that the five-year statute of limitations set out in § 26-17-6(a) bars any action to establish his paternity as to K.M.
Section 26-17-6, as it read before the recent amendment, effective August 1, 2000,[2] provides:
"(a) A child, a child's natural mother, or a man presumed to be the child's father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action within five years of the birth of the child for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a); or
"(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a).
"(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under Section 26-17-5 may be brought by the child, the mother, or personal representative of the child, the public authority chargeable by law with support of the child, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor.
"(d) If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except service of process and the taking of depositions to perpetuate testimony.
"(e) If the child has been adopted, an action may not be brought."
(Emphasis added.)
The trial court was correct in concluding that "the five-year statute of limitations imposed pursuant to § 26-17-6(a), Ala.Code 1975, does not apply" because the action was one to establish the nonexistencerather than the existenceof the father and child relationship between the husband and K.M. Because K.M. was born during the husband's marriage to K.M.'s mother, the husband is the man presumed, under subdivision (1) of § 26-17-5(a), to be K.M.'s father. When the trial court granted the GAL's motion to add D.S.M. as a third-party defendant in the divorce between the husband and the mother, the action became one to declare the nonexistence of the father-child relationship between the husband and K.M. The five-year limitations period of § 26-17-6(a) applies only to actions seeking to declare the existence of a father and child relationship between a man and a child born during that man's marriage to the child's mother. See Ex parte Jenkins, 723 So.2d 649 (Ala. 1998).

*1143 "Section 26-17-6(a) expressly limits to five years after a child's birth an action to declare the `existence` of the father and child relationship presumed under § 26-17-5(a)(1), (2), or (3). Had the Legislature intended the same five-year limitations period to apply to an action to establish the `non-existence` of the relationship, it would have included the term `non-existence' in § 26-17-6(a), as it did in § 26-17-6(b). The choice to exclude the word `non-existence' in § 26-17-6(a) indicates that the Legislature did not intend to impose a strict five-year limitations period on actions brought to challenge a presumption of paternity."
Jenkins, 723 So.2d at 653. See also J.N.H. v. N.T.H., 705 So.2d 448, 452 (Ala. Civ.App.1997) (holding that when the husband, who was presumed under § 26-17-5(a)(1) to be the father of the child, sought to establish the nonexistence of the parent-child relationship between himself and the child, the five-year limitations period did not apply). Cf. State ex rel. T.L.K. v. T.K., 723 So.2d 69 (Ala.Civ.App.1998) (holding that when the State sought to establish the existence of a father-child relationship presumed under § 26-17-5(a)(1) because the child was born within 300 days of the man's divorce from the child's mother, the five-year limitations period barred the action). But cf. Ex parte State of Alabama ex rel. State of Ohio, 718 So.2d 669 (Ala. 1998) (stating, in dictum, that when the State sought to establish the nonexistence of a father-child relationship between children and mother's deceased husband, who was the presumed father under § 26-17-5(a)(1), the five-year limitations period would have barred the action, had it been raised as an affirmative defense); J.P.C. v. O.C.B., 797 So.2d 485 (Ala.Civ.App.2000) (holding that when the mother sought to establish the nonexistence of a father-child relationship between the former husband and a child born during the mother's marriage to the former husband, the five-year limitations period barred the action); State ex rel. E.K.D. v. M.R.W., 662 So.2d 910 (Ala.Civ.App.1994) (holding that when the mother sought to establish the nonexistence of a father-child relationship presumed under § 26-17-5(a)(1), the five-year statutory limitations period barred the action).
As Ex parte Jenkins, supra, makes clear, the only actions barred by the statutory limitations period set out in § 26-17-6(a) are those seeking to declare the existence of a father-child relationship presumed under § 26-17-5(a)(1), (2), or (3). Therefore, based on Ex parte Jenkins and the unmistakably clear language of § 26-17-6(a), it is obvious that the present action was not barred by the five-year limitations period, as the trial court correctly determined. It is also obvious that this court's decisions in J.P.C. v. O.C.B., 797 So.2d 485 (Ala.Civ.App.2000), and State ex rel. E.K.D. v. M.R.W., 662 So.2d 910 (Ala. Civ.App.1994), were incorrectly decided and should be overruled. See J.P.C. v. O.C.B., 797 So.2d at 491-95 (Crawley, J., dissenting). The statements in Ex parte State of Alabama ex rel. State of Ohio, 718 So.2d 669 (Ala.1998), expressing approval of this court's decision in State ex rel. E.K.D. v. M.R.W., were dicta.
The judgment of the Jefferson Circuit Court is affirmed.
AFFIRMED.
PITTMAN, J., concurs.
YATES, P.J., concurs specially.
THOMPSON and MURDOCK, JJ., concur in the result.
YATES, Presiding Judge, concurring specially.
Historically, children born outside of wedlock were treated differently under the *1144 law than those born during marriage. See, e.g., Free v. Free, 507 So.2d 930 (Ala.Civ.App.1986)(noting the harshness of intestate inheritance rights as between illegitimate and legitimate children). The Legislature adopted the Alabama Uniform Parentage Act ("AUPA") for the purpose of promoting full equality for all children, whether born during a marriage or born out of wedlock. Ex parte Presse, 554 So.2d 406 (Ala.1989). To accomplish this purpose, the AUPA sets out a procedure for establishing paternity of a child. Ritter v. State, 494 So.2d 76 (Ala.Civ.App. 1986).
As Judge Crawley noted in his dissent in J.P.C. v. O.C.B., 797 So.2d 485, 492 (Ala.Civ.App.2000)(Crawley, J., dissenting), Alabama, like a number of other states, adopted a version of the 1973 Uniform Parentage Act ("UPA"). The drafters of the UPA and the Alabama Legislature, in its legislation adopting most of the UPA, included the presumption, originating from English common law, that a child born during the marriage was presumed to be the issue of the husband and the wife.
The presumed father has a choice whether he wants to "persist in the presumption that he is the father," Ex parte Presse, 554 So.2d at 411, or to decline to assert the presumption, J.N.H. v. N.T.H., 705 So.2d 448 (Ala.Civ.App.1997). In Presse, the supreme court held that the biological father did not have standing under the AUPA to establish that he was the father of a child born during the marriage of the child's mother to another man where the husbandthe presumed fatherpersisted in asserting the presumption that he was the father of the child. The court stated:
"Being mindful that the [A]UPA espouses principles that seek to protect the sanctity of family relationships by providing a comprehensive statutory network through which a child may enforce its right of support against the presumed father, and because in this case the presumed father ardently wishes to fulfill this objective, we are constrained to hold that [the presumed father]'s presumption of fatherhood takes precedent over any presumption that [the biological father] might possess."
554 So.2d at 412. In J.N.H., the presumed father did not persist in this presumption, and there was evidence indicating that the presumed father never recognized the child as his own.
In the present case, the presumed father is not persisting in his presumption of fatherhood as to the 10-year-old child born during his marriage to the child's mother. My concern is that the courts, by allowing a presumed father, at his discretion, to accept a child he may have had little contact with, or to reject a child he has treated as his own, have given no consideration to the best interests of the child. A child may be psychologically damaged if the presumed father who has had less contact with the child than the biological father now asserts the presumption to the exclusion of the biological father,[3] and there may be harm to the child if the man the child knows as his father suddenly abandons him. In short, the courts have allowed presumed fathers to have it both ways (i.e., those who want to maintain the father-child relationship are allowed to do so and those who want to disavow the father-child relationship are *1145 allowed to do so), without considering the child's best interests.
Our court has also favored the presumed father in applying the five-year statute of limitations of § 26-17-6(a), Ala. Code 1975, to actions brought to prove the nonexistence of a father-child relationship. A presumed father who wished to disavow paternity as to a child born during the marriage of the presumed father to the child's mother was not barred by the five-year time limit set out in § 26-17-6(a) for bringing such an action. J.N.H., supra.[4] However, a natural mother pursuing a paternity action against a man she believes to be the biological father is barred by the five-year time limit from proving the nonexistence of a relationship with the presumed father. J.P.C. v. O.C.B., supra, 797 So.2d 485;[5]State ex rel. E.K.D. v. M.R.W., 662 So.2d 910 (Ala.Civ.App.1994).[6]
Although I believe that the best interests of the child should be given consideration in determining whether the presumed father can avow or disavow paternity, I agree that the five-year limitations period § 26-17-6(a) does not bar the action.
NOTES
[1] In Ex parte Presse, 554 So.2d 406 (Ala. 1989), our supreme court held that as long as a man presumed to be the father by virtue of marital relationship persists in maintaining that presumption, no party has standing to challenge it.
[2] Among other things, the amendments removed the five-year statute of limitations for actions brought pursuant to § 26-17-6(a). Subsection (a) currently reads:

"(a) A child, a child's natural mother, or a man presumed to be the child's father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action at any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a), but for purposes of support, the action shall be brought before the child reaches the age of 19."
(Emphasis added.) Our disposition of this case makes any discussion of the effect of the amendment on D.S.M. unnecessary.
[3] In Presse, 554 So.2d 406, the child lived with the mother and the biological father and referred to the biological father as "Daddy."
[4] I note, too, that a previously adjudicated father is not barred by the five-year time limit from reopening a paternity judgment based on scientific evidence that he was not the biological father. Ex parte Jenkins, 723 So.2d 649 (Ala.1998).
[5] I concurred in the majority opinion in J.P.C. However, I now believe that the five-year limitations period does not bar an action to prove the nonexistence of the presumed father-child relationship.
[6] I dissented in E.K.D. on the grounds that the Legislature did not intend the five-year limitations period to provide the biological father with a shield to avoid his duty to support his child. 662 So.2d at 913.